**Order Filed on July 23, 2018 by
Clerk U.S. Bankruptcy Court
District of New Jersey**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In Re:

**ANTHONY J. BRUNO &
LOURDES G. BRUNO,**

                               Debtors.

Case No.: 17-34197 (JKS)

Judge: Hon. John K. Sherwood

Chapter 13

**DECISION AND ORDER CONFIRMING DEBTORS' CHAPTER 13 PLAN**

The relief set forth on the following pages, numbered two (2) through thirteen (13), is hereby **ORDERED**

**DATED: July 23, 2018**

_____
Honorable John K. Sherwood
United States Bankruptcy Court

**Page 2**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

## **APPEARANCES**

**ROGER CHAVEZ, ESQ.**
The National Newark Building
744 Broad Street, Suite 1600
Newark, New Jersey 07102
*Counsel for Debtors, Anthony J. Bruno & Lourdes G. Bruno*

**MARIE-ANN GREENBERG, ESQ.**
Marie-Ann Greenberg, Standing Trustee
30 Two Bridges Road, Suite 330
Fairfield, New Jersey 07004
*Chapter 13 Standing Trustee*

**Page 3**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

## PRELIMINARY STATEMENT

The Debtors proposed a Chapter 13 plan that excluded their Social Security income from the funding of the plan. The Chapter 13 Trustee objected, arguing that the plan was not proposed in good faith because of the exclusion of such income. The Court finds that the Debtors' decision to withhold Social Security income from the plan is authorized by the Social Security Act and the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Furthermore, in light of the Debtors' lack of retirement savings and an increased dividend to unsecured creditors, the Court finds the Debtors' plan should be confirmed.

## BACKGROUND

Anthony and Lourdes Bruno (collectively the "Debtors"), ages 70 and 67[1], live in a one-family home valued at $160,000 in Elizabeth, New Jersey.[2] The Debtors are collectively receiving Social Security income totaling $2,970 per month.[3] Mr. Bruno has had heart trouble, yet against the advice of his physician, he continues to work as an equipment operator so that the couple may meet their financial obligations and save for their twilight years.[4]

In 2007, the Debtors obtained two mortgages which are secured by their family home. The first mortgage, held by M&T Bank, totals approximately $168,264.30.[5] The second mortgage (a home equity line of credit), held by JPMorgan Chase Bank ("Chase"), totals approximately $75,011.59.[6] In addition to these mortgages, the Debtors accumulated approximately $73,086.00

---

[1] Debtors' Resp. to Trustee's Objection to Confirmation of Plan, ECF No. 24.
[2] *See* Schedule A/B: Property, ECF No. 14.
[3] *See* Ch. 13 Statement of Your Current Monthly Income and Calculation of Commitment Period, ECF No. 14.
[4] Debtors' Resp. to Trustee's Objection to Confirmation of Plan, ECF No. 24.
[5] *See* Claims Register, *In re Anthony and Lourdes Bruno*, Case No. 17-34197.
[6] *Id*.

**Page 4**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

---

in unsecured debt as of the petition date.[7] The couple filed a Chapter 13 bankruptcy petition on November 30, 2017.[8] Because the Debtors fall below the median income for this jurisdiction[9], they could have filed for Chapter 7 relief.[10] Instead, they elected to file for Chapter 13 relief to strip-off Chase's mortgage which is wholly undersecured by their home.[11]

The Debtors' Summary of Schedules lists total income in the sum of $3,394.62 and total expenses of $3,344.62, resulting in a monthly net income of $50.[12] The couples' financial assets consist of a savings account totaling $14,000, $40 cash on hand and a monthly pension of $225.61.[13] The Debtors' Chapter 13 monthly income statement (form 122C-1) lists each spouse's monthly Social Security income, but these amounts were not included in their average monthly income calculations pursuant to the form's instructions.[14] The Debtors did not list their Social Security income on Schedule I of their bankruptcy petition for the purpose of calculating monthly income.

Before filing their Chapter 13 case, the Debtors engaged the Fremont Law Group based in California in an effort to conduct an out of court workout of their debts.[15] The Debtors paid a total of $13,890.24 to the law firm to be used to settle creditors' claims.[16] But this process was

---

[7] *See* Schedule E/F: Creditors Who Have Unsecured Claims, ECF No. 14.
[8] Ch. 13 Voluntary Pet., ECF No. 1.
[9] *See* Ch. 13 Statement of Your Current Monthly Income and Calculation of Commitment Period, ECF No. 14.
[10] *See* 11 U.S.C. § 707(b)(7) (2018).
[11] Debtors' Resp. to Trustee's Objection to Confirmation of Plan, ECF No. 24.
[12] *See* Summary of Your Assets and Liabilities and Certain Statistical Information, ECF No. 14.
[13] *See* Schedule A/B: Property, ECF No. 14.
[14] Ch. 13 Statement of Your Current Monthly Income and Calculation of Commitment Period, Part 1, ¶ 9 "Pension or retirement income. Do not include any amount received that was a benefit under the Social Security Act."; ¶ 10 "Income from all other sources not listed above. Specify the source and amount. Do not include any benefits received under the Social Security Act . . . ."
[15] Debtors' Resp. to Trustee's Objection to Confirmation of Plan, ECF No. 24.
[16] *Id.*

**Page 5**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

unsuccessful.[17] The Debtors' Chapter 13 plan proposes to satisfy the first mortgage held by M&T Bank, strip-off the junior lien held by Chase and pay a pro rata distribution to general unsecured creditors.[18] The Debtors also propose to make adequate protection payments in the amount of $1,416.75 outside of the plan to M&T Bank.[19] The unsecured claims, as of the bar date (April 9, 2018), totaled $103,100.18 including Chase's lien.[20] The Debtors propose to pay $50 per month for thirty-six (36) months for a total of $1,800.[21] Their initial plan yielded about a 1.75% dividend to unsecured creditors, despite the couple having enough to fund nearly a 100% plan if they contributed their monthly Social Security income. However, on May 30, 2018, Chase withdrew its claim, leaving $28,088.59 in claims and resulting in a new dividend of nearly 6.41%.[22]

On January 10, 2018, the Chapter 13 Standing Trustee filed an objection to the Debtors' plan, stating that the couple failed to list all assets or income in violation of 11 U.S.C. §§ 521(a)(1)(B)(i) and 521(a)(1)(B)(ii).[23] Specifically, Debtors' Schedule I reflects that $2,970 per month of Social Security income is not being contributed to the plan. The Trustee maintains that while Social Security income is not required to be included on Form 122C-1 under 11 U.S.C. §§ 101(10A)(B) and 1325(b)(1), the Debtors' failure to devote this income to fund their Chapter 13 plan constitutes a lack of good faith under § 1325(a)(3).

---

[17] *Id*.
[18] Debtors' Ch. 13 Plan, ECF No. 15.
[19] *Id*.
[20] *See* Claims Register, *In re Anthony and Lourdes Bruno*, Case No. 17-34197.
[21] Debtors' Ch. 13 Plan, ECF No. 15.
[22] Withdrawal of Claim No. 3, ECF No. 34.
[23] Trustee's Objection to Confirmation of Plan, ECF No. 22.

**Page 6**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

## JURISDICTION AND VENUE

The Court has jurisdiction over the motions pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## LEGAL ANALYSIS

### I. Social Security Income May Be Withheld From Funding A Chapter 13 Plan.

In determining whether it is permissible for the Debtors to withhold their Social Security income from funding their Chapter 13 plan, Section 407 of the Social Security Act and BAPCPA are instructive.

The filing of a voluntary bankruptcy petition creates an "estate" that is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[24] However, section 407 of the Social Security Act provides, in part, that:

> (a) In general
> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
>
> (b) Amendment of section
> No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.[25]

---

[24] *See* 11 U.S.C. § 541(a)(1) (2018).
[25] *See* 42 U.S.C. § 407 (2018).

**Page 7**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

Rulings by the Sixth, Eighth and Tenth Circuits suggest that the effect of this provision is a complete exclusion of past or future Social Security income from the bankruptcy estate.[26] Other courts have recognized that although debtors are not forced to commit Social Security income to a Chapter 13 plan, "nothing prevents a debtor from voluntarily contributing Social Security proceeds to the bankruptcy estate or voluntarily using such proceeds to fund a plan."[27] In fact, Chapter 13 plans funded in part by Social Security income are fairly common. But the question here is whether a bankruptcy court can compel a debtor to devote Social Security income to a Chapter 13 plan.

One court has suggested that by enacting BAPCPA, "Congress made a conscious effort to cabin the discretion of bankruptcy judges in assessing disposable income."[28] Prior to BAPCPA, bankruptcy judges were permitted to factor into consideration each debtor's ability to pay.[29] This flexible calculation was replaced by a mechanical means test.[30] The test defines "disposable income" as "current monthly income received by the debtor" less amounts reasonably necessary to be expended for the maintenance or support of the debtor, certain charitable contributions and

---

[26] *In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010) ("Section 407 does not contain any qualifying language. It explicitly demands that no past or future social security payments may be subject to the operation of any bankruptcy law."); *In re Cranmer*, 697 F.3d 1314, 1319 (10th Cir. 2012); *In re Buren*, 725 F.2d 1080, 1086-87 (6th Cir. 1984) (concluding "Section 407 specifically prevents judicial intrusion into the benefit payment process," and "Section 407(b) thus strongly indicates that Chapter 13 was never intended to allow bankruptcy courts to compel the Administration to pay debtor's social security benefits directly to the trustee."); 4-522 *Collier on Bankruptcy* ¶ 522.09[10][a] n.76 (16th ed. 2012) ("Congress amended 42 U.S.C. § 407 to clarify that the inalienability of Social Security benefits was not repealed by the Bankruptcy Code, so that such benefits should not even become part of the bankruptcy estate.").
[27] *In re Franklin*, 506 B.R. 765, 776 (Bankr. C.D. Ill. 2014); *See In re Buren*, 725 F.2d at 1086 ("As a practical matter, a willing debtor can simply sign his check over to the trustee.").
[28] *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1131 (9th Cir. 2013).
[29] *Id.* at 1130.
[30] *Id.* at 1131.

**Page 8**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

amounts necessary for business operations.[31] "[C]urrent monthly income" means the debtor's average monthly income from all sources during the previous six months, but explicitly excludes "benefits received under the Social Security Act."[32]  Thus, because the definition of "current monthly income" excludes Social Security income, it has been recognized that "the manner in which the means test calculates 'disposable income' may underestimate the amount of actual funds that a taxpayer has available to pay unsecured creditors."[33]

If a trustee objects to the confirmation of a plan, the court may not approve it unless all of the debtor's "projected disposable income" to be received during the applicable commitment period will be applied to make payments to unsecured creditors.[34]  Based on the analysis above, the term "disposable income" does not include Social Security income.  Thus, the Debtors did not violate BAPCPA's Chapter 13 confirmation provisions by excluding their Social Security income from their Chapter 13 plan calculations.  The Debtors' approach is supported by section 407 of the Social Security Act and specifically authorized by BAPCPA.

## II. In This Case, The Failure To Commit Social Security Income To The Chapter 13 Plan Was Not Bad Faith.

The second issue to address is whether the Debtors' failure to commit Social Security benefits to their plan constitutes a lack of good faith under section 1325(a)(3) of the Bankruptcy Code.  The Trustee maintains that the Debtors' failure to contribute Social Security income to a plan should be considered in the good faith analysis.  Section 1325(a)(3) of the Code provides that

---

[31] *See* 11 U.S.C. § 1325(b)(2)-(3) (2018).
[32] *See* 11 U.S.C. § 101(10A)(B) (2018).
[33] *In re Welsh*, 711 F.3d at 1130.
[34] *See* 11 U.S.C. § 1325(b)(1)(B) (2018).

**Page 9**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

"a court shall confirm a plan if the plan has been proposed in good faith and not by any means forbidden by law."[35] While Congress has not defined "good faith," the Third Circuit has held "that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances."[36] Factors relevant to the totality of the circumstances inquiry may include, among others, the following:

> the nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.[37]

The Ninth Circuit's analysis in *Welsh* is relevant to this issue. In *Welsh*, the debtors filed a Chapter 13 plan that excluded the debtor husband's monthly Social Security income of $1,165 from the funding of their plan.[38] Despite withholding their entire Social Security income, the debtors' plan yielded a 8.14% dividend to unsecured creditors.[39] The trustee objected to the plan, maintaining that even though the debtors were not required to include their Social Security income in calculating disposable income, "the Welshes' failure to dedicate Mr. Welsh's Social Security income to the payment of unsecured creditors requires a conclusion that the plan was not proposed in good faith, as required by § 1325(a)(3)."[40] The Ninth Circuit rejected the trustee's argument, reasoning:

> We cannot conclude … that a plan prepared completely in accordance with the very detailed calculations that Congress set

---

[35] *See* 11 U.S.C. § 1325(a)(3) (2018).
[36] *In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996).
[37] *Id.* at 495.
[38] *In re Welsh*, 711 F.3d at 1122.
[39] *Id.* at 1122-23.
[40] *Id.* at 1131.

**Page 10**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

---

forth is not proposed in good faith. To hold otherwise would be to allow the bankruptcy court to substitute its judgment of how much and what kind of income should be dedicated to the payment of unsecured creditors for the judgment of Congress. Such an approach would not only flout the express language of Congress, but also one of Congress's purposes in enacting the BAPCPA, namely to "reduce[] the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses."[41]

The court acknowledged that "when Congress speaks directly to one of the good faith factors, the judicial good faith inquiry is narrowed accordingly."[42] The Ninth Circuit came to the same conclusion as every other circuit that has been confronted with this issue: "[w]hen a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes [Social Security income], that exclusion cannot constitute a lack of good faith."[43]

However, other cases suggest that there may be circumstances where failure to contribute any Social Security income to a plan could be relevant to a good faith analysis. For example, in *In re Mains* the court stated that, "these benefits [Social Security income], when considered with the rest of debtors' circumstances, are just as relevant to assessing whether debtors are proposing 'a sincerely intended repayment of pre-petition debt.'"[44] In *Mains*, the debtors' monthly after-tax income was $6,321.91, with $2,905.00 attributable to Social Security income and $2,845.46

---

[41] *Id.* (quoting Coop v. Frederickson (In re Frederickson), 545 F.3d 652, 658 (8th Cir. 2008)).
[42] *Id.*
[43] *Id.* at 1132 (quoting *In re Cranmer*, 697 F.3d at 1319; *see Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 227 (5th Cir. 2012) ("Having already concluded that Debtors' plan fully complied with the Bankruptcy Code, it is apparent that Debtors are not in bad faith merely for doing what the Code permits them to do.").
[44] *In re Mains*, 451 B.R. 428, 436 (Bankr. W.D. Mich. 2011).

**Page 11**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

attributable to pensions.[45] After deducting expenses of $4,982.61, debtors still had $1,339.30 per month to pay into their plan yet proposed only $324.00 per month.[46] The Chapter 13 Trustee objected to debtors' plan because the projected dividend to unsecured creditors would have been less than 5%.[47] The Trustee estimated that the debtors could fund a 100% plan in only thirty months had they committed the entire $1,339.30.[48] The court agreed that Social Security income should be excluded from the section 1325(b) analysis but determined that good faith was not present under section 1325(a)(3), reasoning: "Debtors … could just as easily support themselves with their social security benefits and then pay 100% to their creditors from their pension income."[49]

Thus, there are decisions which suggest that Social Security income should be considered as part of the good faith analysis under section 1325(a)(3), and decisions (like *Welsh*) that say that such income should be ignored as a matter of basic statutory construction. This Court believes that the analysis in *Welsh* is very sound and cannot ignore BAPCPA's definition of "disposable income" when considering the Debtors' good faith. On the other hand, this does not mean that Social Security income should be disregarded in all Chapter 13 good faith inquiries. Though Social Security benefits are generally off limits in Chapter 13 cases, there may be situations where they should be considered as part of the "totality of the circumstances."

---

[45] *Id*. at 429.
[46] *Id*.
[47] *Id*.
[48] *Id*.
[49] *Id*. at 437.

**Page 12**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

---

The current case was a close call, but the key factors that lead to a finding of good faith are the increase in the dividend payment to unsecured creditors and the Debtors' lack of retirement funds. The Debtors' current monthly income is $3,394.62, with $225.61 attributable to a pension. The Debtors' initial proposed repayment plan yielded about a 1.75% dividend to unsecured creditors while the Debtors retained $106,920.00 in Social Security income over the duration of the plan. However, circumstances have changed since the Trustee filed its objection. Chase withdrew its claim and the dividend went from almost 1.75% to approximately 6.41%. While this Court has no rigid requirement that must be met for the repayment of unsecured creditors, the Court finds the Debtors' new pro rata distribution more agreeable.

But the most important fact is that the Debtors' Social Security income is essentially all that the Debtors have to support them in retirement. They are both of retirement age and cannot count on Mr. Bruno's work income for much longer. They have limited savings, a small pension payout and no equity in their home. It is likely that the Debtors will need their Social Security income to provide for their basic needs. Among other things, the Social Security Act was enacted to help workers achieve a secure, comfortable retirement.[50] The Debtors seek nothing more here. Given these circumstances, the Debtors' long-term security depends largely on their Social Security income and their choice not to use this income to fund their plan is not bad faith. Therefore, the Court finds that the Debtors' proposed plan meets the good faith requirements of section 1325(a)(3).

---

[50] *See* U.S. Social Security Administration. *Benefits Planner: Retirement*. Available at: https://www.ssa.gov/planners/retire/. Accessed: 6/25/2018.

**Page 13**
In re Anthony J. Bruno & Lourdes G. Bruno
Case No.: 17-34197 (JKS)
Decision and Order Confirming Debtors' Chapter 13 Plan

## **CONCLUSION**

For the foregoing reasons, Debtors' plan is confirmed.